# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEE R. AND JANET KRAHENBUHL,**

        **Plaintiffs,**

v.                                             Case No. 96-C-246

**OSTRICH RANCHERS LIMITED**
**PARTNERSHIP, TONY SANZARI, et al.,**

        **Defendant.**

## DECISION AND ORDER

In 1996, the plaintiffs, Lee and Janet Krahenbuhl ("Krahenbuhl"), filed suit against Ostrich Ranchers Limited Partnership, Tony Sanzari ("Sanzari"), and nine other co-defendants. Plaintiffs alleged that Sanzari and his co-defendants fraudulently sold them $50,250 in securities for various Texas ostrich ranches in violation of Wisconsin securities law.[1]

After the plaintiffs' attempts to personally serve Sanzari failed, the Court granted plaintiffs' request to serve Sanzari by publication in the *Plano Star Courier*. (Docket No. 12). On March 10, 1997, the Court granted the plaintiffs' motion for default judgment. (Docket No. 22). The Court entered total judgment in the amount of $57,004.67, plus interest to accrue until the date of payment. After another decade attempting to collect on their judgment, plaintiffs finally located Sanzari at an address in Florida and served him with a demand for payment in 2006. Now before the Court is Sanzari's motion for an order vacating the judgment against him as void for insufficient service.

---

[1] At the time this suit was filed, there was complete diversity and the amount in controversy requirement under 28 U.S.C. § 1332 was $50,000.

## Attempted Service

The process server attempted to serve Sanzari at the public record business addresses for five of his co-defendants – Ostrich Ranchers Limited Partnership, Lone Star Ostriches L.L.C., Southwest Breeders, Inc., Southwest Breeders and Ostriches, Inc., and Blue Ridge Ostrich Ranch, Inc. (Docket No. 11, Affidavit of Service and Due Diligence, ¶¶ 4-6). One of those business addresses was in Plano, Texas. (*Id.*, ¶ 5). According to the allegations of the First Amended Complaint, Sanzari "served as an executive officer of Lone Star, Southwest Breeders and Southwest Breeders and Ostriches and as an 'agent' of New Ostrich." (Docket 23-4, ¶ 11). The process server was advised that Sanzari "and the companies had moved without notice and had left no forwarding address." (Docket No. 11, ¶ 6).

Next, the process server checked business listings to see if he could find different addresses or telephone numbers for these businesses. (*Id.*, ¶ 7). Those efforts were fruitless, so the process server utilized a "Skip-Trace" search to locate a residence address for Sanzari and his co-defendant wife, Theresa Barbanell, in Plano. (*Id.*, ¶ 8). After learning that Sanzari and his wife were divorced, the process server found a residence address for Sanzari at 7050 Arapaho #1099, Dallas, Texas. The records indicated that Barbanell continued to reside at 729 Wateroak Drive, Plano, Texas 75025. (*Id.*, ¶ 9).

The process server was unable to personally serve Barbanell at her Plano residence, so he left copies of the original summons and complaint hanging on the door of Barbanell's residence, one of which was for Sanzari. (*Id.*, ¶ 10). Then, on May 22, 1996, the process server attempted to serve Sanzari at his apartment address in Dallas, Texas. The occupant of that apartment

advised the process server that he had "recently moved into the apartment and that he did not know Tony Sanzari. The apartment manager likewise advised . . . that they had no record of a Tony Sanzari renting or residing in their complex." (*Id.*, ¶ 11).

Then, the process server learned about a shareholders meeting for the New Ostrich Corporation, to be held on June 15, 1996. (*Id.*, ¶ 12). It was suspected that Sanzari, an agent for New Ostrich, would be in attendance. (*Id.*) Accordingly, the process server attempted to serve Sanzari at the meeting, but an unidentified man advised that Sanzari was not present and the process server was forced to leave the premises. (*Id.*, ¶ 14).

Later, the process server was able to personally serve Michael Fullwood ("Fullwood"), another one of Sanzari's co-defendants. Fullwood indicated that he communicated with Sanzari, so the process server asked Fullwood to tell Sanzari to contact the process server or the plaintiffs' attorneys. (*Id.*, ¶ 16). Finally, the process server left a copy of the summons and First Amended Complaint for Sanzari attached to the door of Barbanell's residence in Plano. (*Id.*, ¶ 17).

**Analysis**

Sanzari moves for relief under Fed. R. Civ. P. 60(b)(4), which provides that the Court may relieve a party from a void final judgment. A judgment is void under Rule 60(b)(4) if the court that rendered it lacked jurisdiction "of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir. 1995). Accordingly, a default judgment obtained after improper service is void for lack of personal jurisdiction over the defendant. *See In re Outboard Marine Corp.*, 369 B.R. 353, 358 (Bankr. N.D. Ill. 2007) (citing

-3-

*Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.*, 126 F.R.D. 48, 51 (N.D. Ill. 1989)).[2]

Fed. R. Civ. P. 4(e)(1)[3] provides that service may be effected "pursuant to the law of the state in which the district court is located." Accordingly, the Court will apply Wisconsin law to determine whether service was proper.

### Reasonable Diligence

Wis. Stat. § 801.11(1)(c) provides that if a party cannot be served personally after "reasonable diligence," service can be made "by publication of the summons as a class 3 notice, under ch. 985, and by mailing."[4] Sanzari argues that the plaintiffs did not exercise reasonable diligence because Sanzari was actually residing in Las Vegas at the time plaintiffs sought alternate service by publication. Sanzari cites a recent skip-trace search which reflects that he lived in Las Vegas from October 1996 to January 1997. However, as discussed above, the process server was attempting to effect service months before October 1996, and the process server's due diligence affidavit was executed in September 1996. (Docket No. 11). Sanzari does not explain his whereabouts during the time period that the process server was actually attempting to effect service.

---

[2] Although Rule 60(b) requires parties to request vacation within a reasonable time, "the reasonable time criterion of Rule 60(b) as it relates to void judgments means no time limit." *Rodd v. Region Constr. Co.*, 783 F.2d 89, 91 (7th Cir. 1986). This is because a void judgment, such as one entered without personal jurisdiction, is a legal nullity, which cannot be validated by the passage of time, even if the amount of time is inordinate. *See Pacurar v. Hernly*, 611 F.2d 179, 181 (7th Cir. 1979).

[3] This matter is governed by the 1996 version of Rule 4, when the Krahenbuhls attempted to effect service on Sanzari. *See Robinson Engineering Co., Ltd. Pension Plan and Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000).

[4] Sanzari does not dispute that mailing is excused in the instant case. Mailing "may be omitted" if the address "cannot be ascertained with reasonable diligence." Wis. Stat. § 801.11(1)(c).

Sanzari also notes the process server's failure to affirmatively state that he exhausted all of the available skip-trace/public records databases. However, "reasonable diligence" does not require "all possible diligence which may be conceived." *Haselow v. Gauthier*, 212 Wis. 2d 580, 589, 569 N.W.2d 97 (Ct. App. 1997). Rather, reasonable diligence requires a plaintiff to "exhaust with due diligence any leads or information reasonably calculated to make personal service possible." *LaVine v. City of Hayward*, No. 04-C-0201-C, 2004 WL 2110753 at *2 (W.D. Wis.) (citing *West v. West*, 82 Wis. 2d 158, 166 (1978)). The process server made repeated attempts to serve Sanzari over a five-month period. He pursued and exhausted numerous leads, as demonstrated by his attempts to serve Sanzari at the Dallas apartment address and at the June 1996 New Ostrich shareholders meeting. Accordingly, the Court concludes that the plaintiffs' efforts to effect personal service were reasonable and diligent under the circumstances. *See Haselow*, 569 N.W.2d at 100-01.

Finally, the Court would be remiss if it did not state the obvious: Sanzari was clearly attempting to evade service. Sanzari did not leave a forwarding address at any of his businesses. He gave a bogus address in the course of his divorce proceedings. He was suspiciously absent from – or hiding at – the New Ostrich shareholders meeting, and the process server was escorted from the premises. And now Sanzari offers no insight into his location during the time period the process server was attempting to effect service. Under similar circumstances, Wisconsin courts do not countenance arguments based on "due process" or "fundamental fairness." *See Welty v. Heggy*, 124 Wis. 2d 318, 328, 369 N.W.2d 763 (Ct. App. 1985) (plaintiff exercised reasonable diligence when efforts were hampered by defendant's process dodging).

**Publication**

To effect proper service by publication, a plaintiff must publish a class 3 notice once each week, for three consecutive weeks, in "a newspaper likely to give notice in the area or to the person affected." Wis. Stat. §§ 985.02(1), 985.07(3). It is undisputed that the Krahenbuhls published the amended summons and complaint in the *Plano Star Courier* once a week for three consecutive weeks on October 20, 27, and November 3, 1996. It is also undisputed that the *Plano Star Courier* meets the statutory definition of a newspaper. *See* Wis. Stat. § 985.03(1)(c) (defining newspaper as "a publication appearing at regular intervals and at least once a week, containing reports of happenings of recent occurrence of a varied character, such as political, social, moral and religious subjects, designed to inform the general reader").

As discussed above, Sanzari's last-known address at the time of publication was the home he shared with his ex-wife in Plano. The process server determined that Sanzari's Dallas address was a bogus address. Also, the last-known address for one of Sanzari's businesses was in Plano. Accordingly, publication in the *Plano Star Courier* was likely to give notice of the suit to Sanzari and in the area of his last-known address.

Sanzari argues that publication in the *Plano Star Courier* was not likely to give notice because it is a small paper with limited circulation. Sanzari's citation to recent circulation data is not relevant to the likelihood of notice in 1996. (Docket Nos. 23-7, 23-8). Even if given in the proper time frame, such information is worthless without any comparative data on population. Sanzari, as the party seeking to vacate a default judgment, bears the burden of demonstrating that

service was deficient or improper. *See Emery v. Emery*, 124 Wis. 2d 613, 622, 369 N.W.2d 728 (1985).

Finally, Sanzari argues that the plaintiffs were actually attempting to publish notice in Dallas, not Plano, because the plaintiffs erroneously represented to the Court that the *Plano Star Journal* is a "newspaper of general circulation in Dallas, Texas." (Docket No. 10). It is possible that plaintiffs were attempting to publish notice in Dallas. It is also possible that plaintiffs made a mistake and meant to indicate that the paper is circulated in Plano. All that matters is that Sanzari had ties to Plano, the summons and complaint was published in the *Plano Star Journal*, and the *Plano Star Journal* was a newspaper likely to give notice in Plano during the relevant time frame. Accordingly, the statutory requirements for service by publication are satisfied in the instant case.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED** that Sanzari's motion to vacate judgment as void and for dismissal of all claims with prejudice [Docket No. 23] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 12th day of October, 2007.

> **SO ORDERED,**
>
> **s/ Rudolph T. Randa**
> **HON. RUDOLPH T. RANDA**
> **Chief Judge**